# THIRD DISTRICT, 1895.

---

## COUNTY OF LLANO v. CITY OF LLANO.
### No. 1323.

1.  **Nuisance—City Authority—Case Adhered to.**—City of Llano v. County of Llano, 5 Texas Civil Appeals, 132, adhered to.   A city can maintain a suit against the county upon a nuisance erected by the county upon a public square in such city.

2.  **Consent Waives Error.**—A subsequent consent to go to trial at the term waives error in refusal of continuance.   See example.

3.   **Judgment Against County—County Commissioners.**—In rendering judgment against the county abating a nuisance authorized by the county authorities upon a public square of the county seat, it was lawful to order the County Commissioners to remove the subject of complaint within six months.

4.   **Practice—Continuance.**—Where it is developed during the trial that the testimony of an absent witness is necessary, the party desiring the witness should move for a postponement.   Failing to do so, he can not complain that his motion for new trial on ground of absence of such witness was overruled.

APPEAL from Llano.   Tried below before Hon. W. M. ALLISON.

*W. C. Linden,* for appellant.—1.   A city can not maintain an action to abate a public nuisance, unless it can show some damage or injury peculiar to itself, and distinct from that suffered by the general public. Burwell v. Commissioners, 93 N. C., 73; 54 Am. Rep., 454; City of Georgetown v. Canal Co., 12 Pet., 91.

2. A city can exercise no authority except that specially conferred by statute, and in the manner provided by statute. Sayles' Civ. Stats., arts. 408, 479; City of Waco v. Powell, 32 Texas, 258.

Doubt resolved against the city: Williams v. Davidson, 43 Texas, 34.

Corporation required to show clear ground for the authority assumed by it: Williams v. Davidson, 43 Texas, 37.

Powers to be strictly construed: Hirshfield v. City of Dallas, 4 Ct. App. C. C., sec. 177.

3. A petition for writ of injunction is fatally defective if it fails to show that without it the applicant is remediless; it must show that there is no legal remedy, and where a statutory remedy is provided, it must be strictly pursued and exhausted before resorting to any other. Sayles' Civ. Stats., art. 404a, Fitzhugh v. Overton, 12 Texas, 5; Burwell v. Commissioners, 93 N. C., 73; 54 Am. Rep., 454.

4. Any party to a civil suit is entitled to a jury if demand is made and a fee deposited or tendered within the time and in the manner required by law, and if at that time there exists any legal barrier to such demand, such as want of jurisdiction or disqualification of the court, said demand and deposit or tender of the fee may be made at any time when the cause is called for trial, although it may operate as a continuance of the cause.

On the first day of the term of the trial court at which this cause was tried, this cause was on appeal to the Court of Civil Appeals, and the mandate conferring jurisdiction on the trial court was not filed until the ninth day of said term, at which time the jury civil docket for the term had been disposed of, and the court was engaged in the trial of the criminal docket, and continued so engaged during all the remainder of the term for which a jury had been summoned.

The application for a jury was not made until after the jurors for the term had been discharged. The explanation by the trial judge of his action in refusing a continuance is: "That the case was afterwards at a later day of the term called for trial, and defendant announced ready for trial, though the court offered to continue the cause on its application for absent witnesses; said witnesses, however, did appear, except one whose evidence the defendant stated was immaterial. Thereupon the case proceeded to trial." Brown v. Chenoworth, 51 Texas, 469; Hardin v. Blackshear, 60 Texas, 132; Berry v. Railway, 60 Texas, 654; Gallagher v. Goldfrank, 63 Texas, 473; Allyn v. Willis, 65 Texas, 65.

5. A Commissioners Court can not be required by a judgment of any court to do any illegal act. Sayles' Civ. Stats., arts. 1515, 1515a, 2752, 4674, 4705.

*H. R. McInnis,* City Attorney, *Chas. L. Lauderdale,* and *John C. Oatman,* for appellee.

FISHER, CHIEF JUSTICE.—This suit was brought to the May Term, 1893, of the District Court of Llano County, and is an action to abate

as a public nuisance the county jail of appellant county, situated on the public square, in the corporate limits of the city of Llano, appellee. At said term the court sustained the general and special demurrers of defendant county, appellant herein; and, the city declining to amend, the cause was dismissed. From this action of the court plaintiff appealed, and the cause was reversed and remanded for another trial, the mandate being filed on the 19th day of December, 1893, same being the 9th day of the December Term of said court.

Both plaintiff and defendant filed amended pleadings. Plaintiff alleged the dedication to public use by defendant of the ground occupied by the jail, without a reservation for jail purposes, the acceptance of same by the public, the incorporation of plaintiff, city of Llano, and the dangerous and unhealthy condition of the cesspool used in connection with said jail. Defendant answered by general and special exceptions and by general denial, and a special answer traverses the allegations of plaintiff's petition. Said exceptions were overruled, to which action of the court defendant excepted. The cause was on the 11th day of January tried by the court without a jury, and resulted in a judgment for plaintiff, adjudging said jail to be a public nuisance and purpresture, and commanding said defendant county, through its Commissioners Court, to remove same within six months from the date of said judgment.

The conclusions of fact found by this court are as follows:

1. The county of Llano, defendant, was duly organized in the year 1856. In the year 1858 the county of Llano became the owner of that fifty acres of land described in plaintiff's petition. In that year defendant surveyed and platted said fifty acres of land into streets, blocks, and lots, and into that one-square parcel of land described in plaintiff's petition, and in said petition referred to as a public square, said square being about 300 feet square, and said defendant then, in the year 1858, made a map of said fifty acres of land as so surveyed and platted into said streets, blocks, lots, and square, upon which map all of said streets, blocks, and lots were laid out and described and represented by names, as to said streets, and as to said lots and blocks by numbers, and upon said square the words "Public Square" were written on said map, and the said map represented and showed the size and width and length of said streets, blocks, and lots, and said square, and the relative location and comparative size of each and all of them to each other and to all the others of said streets, blocks, lots, and said square. The said fifty acres of land was so surveyed, platted, and subdivided into about thirty blocks of average size of about 300 feet square, and said square described in plaintiff's petition as "public square" is situated about the middle of said parcel of land, and is surrounded on its four sides by the said streets, which extend in each direction entirely across said fifty acres of land. Said defendant then, in the same year, filed and recorded said map in the office of the clerk of the County Court of Llano County, Texas.

2.　In the year 1858, after said map had been so filed and recorded, and at about six different times after said year 1858, and before the year 1881, that is to say, about the years ——, said defendant lawfully offered said blocks and lots of land for sale to persons whoever desired to purchase the same, and did, at each of said times, lawfully sell large numbers of said lots, and before and during the year 1880 so sold and conveyed about all of said blocks and lots, and so sold and conveyed them to many different persons; at each of said several sales the said map was exhibited by the defendant to said purchasers, and represented by it to show the size and number of said blocks and lots, the names of said streets, and said square, described in plaintiff's petition as "public square," and the comparative size and relative location of each and all of said streets, blocks, lots, and square as to each other.

Most all of said lots and blocks of land were, by the persons to whom they were so sold or persons claiming and holding the same through them, occupied and improved prior to 1880, and are now occupied or improved either as residences or for store business houses.

Plaintiff here introduced the map of the city of Llano, admitted to be a substantial copy of the original map referred to in the above agreement, and so far as it appertains to this suit, is as follows:

3.  The petition of the citizens of Llano to the county judge, that he order an election, to be held on the 15th day of June, 1892, to determine whether or not the territory therein described, and the inhabitants thereof, should be incorporated under the laws of the State of Texas as the city of Llano; filed May 14, 1892.

Certified copy of an order of the county judge in response to said petition, ordering an election to be held at the court house in Llano, on the 31st day of May, 1892, to determine whether or not the city of Llano should be incorporated; dated May 14, 1892, and entered in the minutes of the Commissioners Court, book 3, page 29.

Certified copy of an order made by the county judge declaring the result of the election to be "for incorporation," and adjudging that the city of Llano was incorporated; dated June 1, 1892, and entered in the minutes of the Commissioners Court, in book 3, page 29.

4.  R. F. Holden testified, for the plaintiff, as follows: "I was elected commissioner of Llano County when it was organized, and held the office four years. During that time W. C. Billingsley was employed by the court to survey and plat into lots, blocks, streets, alleys, and a public square that fifty acres of land known as the Wil· son donation to the town of Llano, which had previously been donated for the purpose of a county site, and on which the city of Llano is now situated, and which said city fully embraces within its corporate limits. I think this surveying and platting was done in the year 1858. Soon after this I attended a public sale of town lots, at which sale the map or plat made by Billingsley was exhibited to purchasers. I attended at other sales of town lots after this, but do not remember whether the map was exhibited or not. It has been so long I do not now remember much about it. The lot of ground on said map marked 'Public Square' was by the court reserved from sale for the purpose of building a court house upon it."

Cross-examined: "I do not remember whether the court at that time reserved the right to build a jail upon the public square."

We find, that this witness is the only one who testified as a member of the court when the map was made donating the public square, and from this map and his evidence we conclude, that the appellant donated the public square in question to the use of the public, and that it did not, at the time of making said donation, reserve or retain any right or privilege to use it for the purpose of erecting thereon a jail.

5.  We find, that the following witnesses testified as follows, and, as they are not contradicted, we conclude that they truly stated the facts:

J. Holmig testifies, for the defendant: "I have lived in Llano County since 1862; was commissioner of Llano County in 1863–4. The general reputation among the people at that time was, that the public square was reserved by the county for court house and jail purposes. While I was a member of the court a tax was levied for two years for the purpose of building a jail upon the public square. No objection was offered by any one to this being done. The question of location

was discussed by the court. William Billingsley, the man who had surveyed and platted the town site for the county, was at this time chief justice. I told him that we ought to put the jail on the public square, as the county owned that ground for that purpose. He said yes. At this time the court house was situated south of the public square. The prisoners were kept chained to trees on the public square during the terms of court."

Cross-examined, he said: "I never heard the question discussed as to whether the county did or did not reserve the square for purposes of building a jail on it. Sometime while I was commissioner, we levied a tax for the purpose of building a jail on the public square. This tax was collected for two years. This was during the war. I have been in Llano County ever since it was organized, and have always understood that the public square was left open for a court house and jail."

H. Vasterling, for the defendant, testifies: "I was county commissioner of Llano County in 1863–4. The general reputation among the people of the county was, that the public square was reserved by the county for court house and jail purposes. A tax was levied and collected for two years with which to build a jail on the public square. No objection was offered by any one to this arrangement. I discussed the question of jail site with William Billingsley, who was then chief justice. I told him I thought the jail ought to be built on the public square, as the county owned that property. He said yes."

Cross-examined: "I know of the circumstances of laying off the town site. People who come to town have always hitched their teams on the public square, and around in other places all around town. I never heard the question discussed as to whether or not the square was reserved for purpose of building a jail on it."

J. F. Barnett, for the defendant, testifies: "I was commissioner of Llano County during 1874–5, when the first jail was built on the public square. The general reputation among the people was, that the square was left open for court house and jail purposes. No objection was offered by any one to the jail being built upon the square. I live twenty miles from Llano. Two years ago, when typhoid fever was raging in Llano, the same disease prevailed in my neighborhood. Several members of my family and others in the neighborhood had it."

Cross-examined: "I never heard the right of the court to build a jail on the square questioned. Our understanding was, that it was for court house and jail. I never heard it discussed as to whether the square was or was not reserved for that purpose."

Redirect: "I never heard this right discussed anywhere. The general understanding among the people was, that the square was reserved for court house and jail purposes."

E. Krewitz, for the defendant, testifies: "I have lived in Llano County thirty-five years; was commissioner several times—once in 1873–4–5. The general reputation among the people of the county all

the time was, that the square was reserved for court house and jail purposes. Prisoners were chained or guarded on the public square long before we had either court house or jail. Sometimes they were sent to other counties."

Cross-examined: "I heard everybody talk about the square being for court house and jail purposes. Old man Oatman, who gave land for a town site, told me he gave it for court house and jail purposes. I was recruiting officer for the Confederate army in this county during the war, and during that time I think I knew every man, woman, and child in the county."

Redirect: "After the county site was located the reputation with everybody was, that the public square was left open for court house and jail purposes."

John C. Oatman, for defendant: "The old jail was where the new one now stands."

6. A jail was built upon said public square by appellant, and was used by the county of Llano as a jail at the time of filing this suit and trial of this case, and for many years prior thereto, probably since the year 1874.

7. The county of Llano, in connection with said jail, constructed a cesspool on said public square as a receptacle for human excrement and effete matter, and it was used for that purpose, and the odors and gases arising therefrom were foul and injurious to the health of a part of the inhabitants of the city of Llano, and as such were dangerous to the health and lives of the inhabitants of said city, and therefore we conclude that said cesspool was and is a public nuisance.

8. We conclude, that the jail was erected on said public square by the appellant without any right or authority for so doing, and that it is an encroachment upon said square and a use thereof inconsistent with the purposes of said dedication of said square, and that it is, as declared by the judgment of the trial court, a purpresture and a public nuisance.

*Opinion.*—1. The questions presented in appellant's first, second, and third assignments of error were passed upon by this court in the first appeal of this case, which is reported in 5 Texas Civil Appeals, 133.

2. There is no merit in the assignments of error that complain of the refusal of the court to place the case upon the jury docket, and in refusing a continuance. The bills of exception explain these rulings, and we do not desire to further discuss them.

3. The findings of fact in the main dispose of the questions raised in the sixth assignment of error, except as to power of the trial court to render judgment requiring the County Commissioners Court to remove the jail within six months. The Commissioners Court are the representatives of the county who are charged with the duty of providing it with a jail, and in a general way have control over its public

property and buildings. The trial court, sitting as a court of law and equity, with full power to render a judgment that will cure the evil and provide a remedy for the wrong done, has the added jurisdiction to render such a decree as may be necessary to meet the wants of the particular case, and in view of this, to require the one that created and committed the nuisance to remove it. The county in this case is guilty of committing the nuisance, and it seems only proper that it should be required to remove it; and in decreeing against it, the judgment should run against those that have charge and control of its corporate affairs.

4. When the materiality of the desired evidence of Billingsley was discovered, the appellant should then have moved for a continuance. It seems that this evidence was discovered before the trial was concluded, and the appellant failed to call the court's attention to it until after the judgment had gone against it, and then by motion for new trial. Under the circumstances, no error was committed in overruling the motion for a new trial.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Delivered January 2, 1895.