## L. R. DAUGHERTY ET AL. v. J. A. TEMPLETON.

### Decided April 18, 1908.

**1.—Trespass to Try Title—Defense—Surprise—New Trial.**

In trespass to try title in the usual form, the defense of estoppel is admissible under the plea of not guilty, and the defendant in such action is not required to disclose to the plaintiff the fact that he will rely on said defense. A motion for new trial, based upon surprise, and charging the defendant with fraud, artifice, unfairness and deceit in withholding from plaintiff notice of the defense of estoppel, considered, and held properly overruled.

**2.—Same.**

Although a defendant, in trespass to try title, files an abstract of title in compliance with a demand for the same by the plaintiff, he is not required to disclose therein a defense of estoppel.

**3.—Same—Surprise—New Trial.**

Upon a motion for new trial, facts considered, and held insufficient, in that the plaintiff failed to use the necessary diligence to obtain the alleged newly-discovered testimony. A new trial will not be granted on the ground of surprise when it appears that the evidence might have been anticipated and met had the party been diligent in preparing his case.

**4.—Same.**

Where the materiality of the testimony of an absent witness is discovered during the trial, and no continuance is sought in order to procure the same, it is too late to urge it as a ground for new trial. Such a motion is addressed to the sound discretion of the trial court.

**5.—Trial—Practice—Refusal to Pass on Issue.**

Where the trial is without a jury, and the judgment of the court, supported by the evidence, is based on the defense of estoppel, the refusal of the court to pass on the issue of limitation plead by defendant cannot be complained of by the plaintiff.

**6.—Trial without Jury—Improper Evidence—Harmless.**

When a trial is before the court without a jury, the admission of improper evidence is harmless when there is other and sufficient competent evidence to support the judgment.

**7.—Estoppel—Sufficient Evidence.**

Upon an issue of estoppel *in pais,* evidence considered, and held sufficient to support a judgment based thereon as to the identical land in controversy.

Appeal from the District Court of Kaufman County. Tried below before Hon. F. L. Hawkins.

*Lee R. Stroud,* for appellants.

*J. A. Templeton, in pro. per.*

BOOKHOUT, Associate Justice.—This suit was instituted by appellants in the usual form of trespass to try title to recover of appellee fifteen acres of land out of the Martha Music League and Labor survey in Kaufman County. Appellee plead not guilty, and the three, five and ten years statutes of limitation. A trial before the court without the intervention of a jury resulted in a judgment for appellee. Upon the overruling of appellants' motion for new trial they perfected an appeal to this court. The trial court filed conclusions of fact as follows:

"1st. I find the legal title to the land in controversy at the time defendant purchased same from his vendor, E. T. Odom, was in John M. Lewis.

"2d. I find that the defendant, J. A. Templeton, in the fall of 1905, purchased said land from E. T. Odom, who claimed same under mesne conveyances from the heirs of George W. and Susan R. Daugherty, to wit: J. H. Daugherty, Brown Daugherty and Alice Daugherty.

"3d. I find that before purchasing said land from E. T. Odom, the defendant, J. A. Templeton, went to said J. M. Lewis and asked him if he owned said land or claimed to own same, and said Lewis then and there told defendant that he did not own or claim said land, and he thus disclaimed to said Templeton the ownership of said land.

"4th. Said Templeton believed and relied on such disclaimer and he was thereby deceived and misled, and relying upon such disclaimer he was induced to purchase and he did purchase said land from said Odom, and he was induced to pay and he did pay said Odom therefor $535, which was the full value of said land.

"5th. I find that plaintiffs acquired the only title which they have to said land from said John M. Lewis after said Lewis had disclaimed owning said land to said Templeton, and after said Templeton had purchased said land from said Odom, and had paid him therefor. I further find that the conveyance of said land from said John M. Lewis to plaintiff was and is in the form of a quitclaim deed and that same was executed on the 20th day of April, 1906. I further find that plaintiffs paid nothing for said land.

"6th. I find that plaintiffs are grantees of said John M. Lewis, and

that they are bound by. the disclaimer of said Lewis to said Templeton to the same extent that Lewis was."

We adopt these conclusions.

*Opinion.*—The first assignment of error complains. of the court's action in overruling their motion for new trial.

The appellants, upon the trial, introduced evidence tending to prove title to the land in controversy in one J. M. Lewis, after which they introduced in evidence a quitclaim deed from J. M. Lewis to themselves, made subsequent to appellee's purchase of the land. The appellee testified, in substance, that prior to his purchase he heard that J. M. Lewis claimed the land, and that he called upon him to ascertain if he claimed the same, and was told by said Lewis that he did not own or claim the land. That thereupon he purchased and paid value for it, relying on the statements of said Lewis. That had Lewis claimed the land he would not have bought the same. The appellants insist that they were surprised by this evidence and that appellee concealed the same from them and that they could not have reasonably anticipated the same and for this reason they have not had a fair trial and the trial court should have granted a new trial.

The suit was in the usual form of trespass to try title. Appellee plead not guilty, and the three, five and ten years' statutes of limitation. He also plead over against his warrantor. No demand for an abstract of title was ever made by either party of the other, nor was any such abstract ever filed. Some time prior to the trial, each party gave to the other a list of the title papers which they might desire to introduce in evidence on the trial. This was done to obviate the necessity of filing and giving notice of such instruments. Some time before the trial, plaintiff's counsel requested defendant to agree to a common source of title, to which request defendant replied by letter dated November 30, 1906, acknowledging the receipt of a skeleton abstract of the chain of title, but declining to agree to the common source. The letter proceeds, "There is so much uncertainty as to the description of the land as given by these several conveyances, that I can not tell from the abstract what the instruments do really convey. Again, it is probable that my claim to the land may have to rest solely upon limitation, and possibly, upon five and ten years' limitation, without connecting with any common source. In view of this fact, I have eliminated that feature of the agreement which you sent me; otherwise the same is all right and I have had the same copied, omitting the agreement as to common source, and herewith enclose you a duplicate of such agreement." After plaintiffs had closed their testimony and had introduced their entire chain of title, including the deed from John M. Lewis to themselves to the land in controversy, they rested their case. Defendant, in making out his case, testified. in his own behalf to his conversation with John M. Lewis, on which he predicated his defense of estoppel. On cross examination, he was asked by plaintiffs' counsel the following questions, to which he made the following answers, viz.:

"Q. Who have you ever mentioned to, at any time by letter or otherwise, Mr. Lewis' parol disclaimer of this land? A. Well, I never

mentioned it to you, Mr. Stroud, because I expected to rely on it. Q. Through prudence, then, you withheld knowledge of that fact? A. I say I withheld it—I didn't tell you; I mentioned it frequently to parties in Fort Worth. Q. Didn't you lead me to believe that you were going to rely solely upon the statute of limitations? A. I don't know what I led you to believe. I never intentionally misrepresented anything."

Plaintiffs, in the fifth subdivision of their amended motion for a new trial, which was not sworn to, charged defendant with fraud, artifice, unfairness and deceit, in withholding from their attorney notice of the defense of estoppel until it was developed on the trial. Attached to this motion is the affidavit of said attorney, wherein he reiterates such charge, and states that as soon as defendant's testimony began to develop the issue of estoppel, he at once had his clients communicate by wire with John .M. Lewis, and that Lewis stated that he would probably be able to come to the trial. That he also had Lewis summoned as a witness, but he was sick and grew worse, so that he could not come, etc. Plaintiffs were thus shown to have been in communication with Lewis for some time before the trial closed, and they knew that he would not be present at the trial. In their motion for a new trial they stated that when the defense of estoppel began to develop it did not occur to their counsel to withdraw their announcement and seek for a continuance of the case. Defendant filed his affidavit controverting the affidavits attached to the motion, explicitly denying that he practiced any deceit, fraud or unfairness whatever on plaintiffs' attorney. Appellee was not required to disclose to appellants or to their attorney, in advance of the trial, his defense to this action, and he was guilty of no such fraud or unfair concealment as would entitle them to a new trial because of his failure to inform them in advance of the trial what his defense would be. The defendant did not specially plead estoppel, but he plead not guilty, which plea was sufficient to let in the defense of estoppel. Parker v. Cockrell, 31 S. W., 221; Scarborough v. Alcorn, 74 Texas, 360; Sayles' Civ. Stat., arts. 5260 to 5262; Arthur v. Ridge, 89 S. W., 15. And this is true, notwithstanding an abstract of title omitting all mention of such defense may have been demanded by plaintiffs and filed by defendant. Parker v. Cockrell, *supra*.

Again, we are of the opinion that appellants did not exercise such diligence, either before the trial, or during its progress, to obtain the testimony of John M. Lewis, as will entitle them to a new trial on the ground of surprise or of newly discovered evidence. John M. Lewis was a resident of Kaufman County and of plaintiffs' own home town, Forney, and they had known him intimately for many years. They knew, that he knew as much and probably more about the land in controversy and the title thereto than any other living man. They knew that defendant was claiming this land by mesne conveyances from J. H. Daugherty and his brother and sisters, who were the nephews and nieces of Lewis, and that defendant was trying to prove that they had acquired a good title thereto by limitation. Plaintiffs further knew that they were endeavoring to prove that the possession held by J. H. Daugherty, et al., was not adverse to Lewis, but that

they held under Lewis and in subordination to his title. J. M. Lewis in his affidavit states that in the spring of 1906, and before he had conveyed the land to plaintiffs, defendant came to his (affiant's) store in Forney and made some inquiries of him about the land in controversy. That he had no recollection of either claiming or disclaiming the land on this occasion, but that "he told Templeton to talk to Daugherty Bros., who had a meat market in Forney, and then hunt up the true owner from the records." He further states in his affidavit that he met plaintiff, L. R. Daugherty, soon after his conversation with defendant and told him about Templeton's visit, and that he thereafter signed the quitclaim deed to plaintiffs. L. R. Daugherty testified on the stand that about April 1, 1906, he met J. M. Lewis in Forney and that Lewis informed him that Templeton had asked him (Lewis) for a quitclaim deed to the land. That Lewis said he thought plaintiffs' title would hold. That he (Daugherty) then consulted with Mr. Stroud, his attorney, who advised him to get a quitclaim deed from Lewis. That Mr. Stroud prepared the deed which was introduced in evidence, and he then got Lewis to sign it.

A new trial will not be granted on the ground of surprise, where it appears the evidence might have been anticipated and met had the plaintiffs been diligent in preparing their case. Pickett v. Martin, 16 S. W., 1007; Briggs v. Rush, 20 S. W., 771.

Again, it is held that where the materiality of the testimony of an absent witness is discovered during the trial and no continuance was sought in order to procure the same, it is too late to urge it as a ground for new trial. Appellants admit that they discovered the materiality of the testimony of Lewis during the trial and they failed to ask for a continuance of the case. Llano County v. City of Llano, 28 S. W., 926 and 929; City of San Antonio v. Kreusel, 17 Texas Civ. App., 594; Gregory v. Southern Pac. Ry. Co., 2 Texas Civ. App., 279. A motion for new trial on the ground of surprise or newly discovered evidence is addressed to the sound discretion of the trial judge, and his action in overruling the same will not be reviewed unless it affirmatively appears he has abused such discretion. San Antonio Gas Co. v. Singleton, 59 S. W., 920; Galveston, H. & S. A. Ry. Co. v. Kief, 58 S. W., 625. The record in our opinion fails to show such abuse in this case.

The second assignment complains of the action of the court in failing to find, when requested by motion, whether the defendant could or could not recover upon the statute of limitation. In view of the finding of the court on the issue of estoppel, a finding on the issue of limitation was unnecessary and unimportant.

It is contended that the court erred in admitting, over plaintiffs' objection, the hearsay statement of defendant's witnesses, J. H. Daugherty, T. M. Brooks, and E. T. Odom, made to them by defendant Templeton, at Fort Worth, alone and in the absence of plaintiffs, to the effect that J. H. Daugherty and his brothers and sisters had once possession of and claimed the land sued for, for a great number of years, and that they had a title by limitation, there being no proof whatever of any claim of ownership, except said hearsay and self-serving

declarations of the said witnesses through whom defendant Templeton seeks to establish his limitation title.

The case was tried by the court without a jury, and there was sufficient evidence, excluding the evidence complained of, to support the judgment. If there was error in admitting the evidence, it is not ground for reversal of the judgment. First National Bank v. Greenville Oil and Cotton Co., 24 Texas Civ. App., 646; Smith v. Bunch, 73 S. W., 559.

The fourth assignment complains that the court erred in finding that plaintiffs, who clearly deraigned title from the State to Bailey Daugherty, deceased, and to themselves as his heirs, ever lost their said title by estoppel on account of any declarations of John M. Lewis to defendant, and purchase by defendant, or that estoppel applies to all in this case.

The plaintiffs in deraigning title to the land in controversy from the State down to their ancestor, Bailey Daugherty, introduced in evidence, among other conveyances: First, a deed from Bailey Daugherty and George W. Daugherty to John M. Lewis, conveying to him this particular fifteen acres of land. Second, a deed from John M. Lewis to Bailey Daugherty, made in 1872, conveying to him said tract of land. In this conveyance, this particular fifteen acres was described by metes and bounds and was segregated from a larger tract. Plaintiffs then introduced: First, an order of the Probate Court of Kaufman County, made in the administration of the estate of Bailey Daugherty, deceased, dated July 2, 1877, setting apart to the widow and minor children of Bailey Daugherty "the homestead consisting of 200 acres of land, a portion of a 300 acre tract described in the inventory as a part of the Martha Music L. & L. survey, situated in Kaufman County, Texas," Second: Order dated January 23, 1878, granting the application to sell lands belonging to said estate which are described in said order as follows, viz.: "'One hundred acres of land, part of the Martha Music L. & L. survey, being the balance of said tract after deducting the homestead two hundred acres." Third, order of sale last above described and directing the administrator to sell said lands which are in said order described as in the last preceding order, with the following words added, viz.: "and reference is made to the deeds of the said Bailey Daugherty, deceased, for a more perfect description." Fourth, order dated March 26, 1879, continuing the administrator's report of the sale of said land. Fifth, order of the court, dated May 20, 1879, confirming the sale of said lands and directing the administrator to make deed thereto to the purchaser thereof. This order recited the administrator's report of the sale *in haec verba,* and duly approved same. In this report the land sold was described as follows, to wit: "One tract of about one hundred acres of land lying and being in the County of Kaufman and State of Texas, the same being all the land owned by Bailey Daugherty, deceased, on the Martha Music survey except the two hundred acres homestead, at 50 cents an acre, to John Lewis, he being the highest bidder, $50." Sixth, administrator's deed, dated July 8, 1879, made in pursuance of said order of confirmation; conveying to John M. Lewis said land which is in said deed described as follows, viz.: "All that tract of land belonging to the estate of

said deceased and being in the county of Kaufman and State aforesaid, containing about one hundred acres of land, the same being all the land owned by Bailey Daugherty, deceased, on the Martha Music head-right survey, except the two hundred acres reserved for homestead," etc. This deed recites the probate proceedings above specified, authorizing the execution of the conveyance, and recites the payment by John M. Lewis of the purchase price of said land. Seventh, widow's designation of homestead and order of the Probate Court thereon, made in said probate proceedings on the 27th day of November, 1880, wherein the homestead theretofore set apart to the widow and minor children of Bailey Daugherty is described by metes and bounds. All of the foregoing proceedings were in due form and were properly authenticated.

Eighth. Plaintiffs also introducd a decree of the District Court of Kaufman County, rendered in cause No. 1980, James M. Daugherty, et al. v. George H. Crawford et al., wherein the plaintiffs herein joined by their brothers and sisters, all of whom, suing by their next friend, sought to recover of John M. Lewis and others a tract of one hundred acres out of the Martha Music survey in Kaufman County, being all of the lands in said survey owned by Bailey Daugherty, deceased, except the 200 acre homestead, which had been set apart to his widow and minor childrn. John M. Lewis having plead over against the plaintiffs' seeking to recover that part of said lands claimed by him, severed from his codefendants, and upon the trial as between him and the plaintiffs recovered the lands so claimed by him, which are in said judgment described as follows, viz.: "Situated in Kaufman County, Texas, being a part of the Martha Music League and Labor survey, and being all that portion of said survey owned by Bailey Daugherty, deceased, at the time of his death (except two hundred acres set apart and designated as a homestead) and being the same tract or parcel of land conveyed to defendant Lewis by the administrator of said Bailey Daugherty by deed dated July 8, 1878, and duly recorded in Book Z, page 543 of the records of deeds of Kaufman County, provided that there is excepted out of this tract of land not claimed by said defendant Lewis about seventy-six acres of land included in a tract of one hundred acres herein sued for." The plaintiffs recovered nothing in said suit, and all costs were adjudged against them. We think it clear that the land sued for was that part of the land conveyed to J. M. Lewis by the administrator's deed of July 8, 1879, after deducting therefrom the seventy-six acres which Lewis failed to recover in the suit of J. M. Daugherty et al. v. George H. Crawford et al. The fifteen acres of land in controversy is in the shape of a triangle which is bounded on the southeast by the Yates 100-acre tract, on the southwest by the public road, on the southwest line of the original survey, and on the north by a tract of land owned by Glinn and by the old George W. Daugherty homestead which is now owned by the defendant. There is nothing to show that this land was ever in any way connected with or formed any part of the Bailey Daugherty homestead, but all indications are to the contrary. J. M. Aiken, who first fenced this land in January or February, 1903, testified that up to that time it had been unenclosed. He understood that it belonged to John M. Lewis, and he secured from Lewis permission to fence it,

which he did by building a line of fence along the southwest line of
the tract from the Glinn corner to the Yates corner.   He thereafter
held it under Lewis, and with Lewis' consent.   When he sold out and
moved away he transferred his holding to the George W. Daugherty
heirs, under whom defendant claims, and these heirs likewise claimed
to hold the land under Lewis, and with his consent; until they sold
out their homestead tract, when possession of this fifteen acres was
delivered with the homestead tract to their vendee Brooks.   Until the
sale to Brooks those in the possession of said land believed that said
land belonged to said Lewis, and they always spoke of the land as
belonging to him, and it was known as the John M. Lewis tract.

The contention of appellants seems to be that the deeds, orders and
judgments introduced in evidence fail to sufficiently describe the land
in controversy to put the title in J. M. Lewis, and that a disclaimer
by him would not estop the plaintiffs, who are heirs of Bailey Daugh-
erty, to whom the land was granted.   We are of the opinion that the
description of the land contained in these proceedings of the Probate
Court and the deeds under the orders of that court, in connection with
the other evidence, were sufficient to identify the land and passed title
to the same from the estate of Bailey Daugherty, deceased, to John
M. Lewis, and if plaintiffs could recover at all, it would be only
as vendees of said Lewis.   Herman v. Likens, 90 Texas, 448;
Arthur v. Ridge, 89 S. W., 15 and 18; Pierson v. Sanger, 83 Texas,
164; Wilson v. Smith, 50 Texas, 367; Linnartz v. McCulloch, 27 S.
W., 279; Dohoney v. Womack, 1 Texas Civ. App., 362; Overand v.
Menczer, 83 Texas, 127.   The disclaimer made to appellee by John
M. Lewis is to the effect that he did not own, or claim, the land in
controversy, when acted on by the defendant, as found by the trial
court, was sufficient to estop said Lewis and the plaintiffs, who claim
under and in privity with him, from ever thereafter asserting title
to said land adversely to the claim of this defendant, and the trial
court correctly so held.   Stewart v. Crosby, 26 S. W., 139; Commer-
cial Nat. Bank v. Nacogdoches Compress Co., 66 C. C. A., 375; 133
Fed., 501; Leather Mfg. Bank v. Morgan, 117 U. S., 96, L. ed., Book
29, 816 to 819, and authorities there cited; Holland v. Thompson, 35
S. W., 21; Kempner v. Huddleston, 37 S. W., 1067; Hughes v. Land-
rum, 89 S. W., 85; White v. White, 95 S. W., 737; Com. Eq., 3d ed.,
vol. 2, secs. 802, 803, 807, 808; Harmsen v. Wesche, 32 S. W., 193;
Scottish-American Mortgage Co. v. Scripture, 40 S. W., 210.

The ninth assignment complains that the trial court after request
to do so, erred in failing to find if "when J. A. Templeton went and
inquired of J. M. Lewis about his title he did so in search or inquiry
for the true record owner, and if from Lewis' declaration he went
away believing that Lewis was, or was not, the record owner of said
15 acres."

The tenth assignment complains that the court, after having been
requested to do so, erred in failing to find "if defendant Templeton
when he bought from J. H. Daugherty, et al., as recited in the court's
findings, believed that they had any title other than by the statute
of limitations, and if he believed that the record title was in another

than Lewis and equally menaced him as if he had found the same to be in Lewis."

The failure to make these findings presents no reversible error. Having held the evidence was sufficient to pass the title to the land in controversy from the estate of Bailey Daugherty to J. M. Lewis, and that plaintiffs were estopped to claim the land under their quitclaim deed from Lewis, it was unnecessary to make the findings requested.

We conclude that the trial court properly held that plaintiffs were estopped from asserting title to the land in controversy as against appellee, and the judgment against them in appellee's favor was correct. Judgment is affirmed.

*Affirmed.*

Writ of error refused.