### 7556

#### THOMAS' v. ATLANTIC COAST LINE R. R. CO.

1. CARRIER—FREIGHT—BILL OF LADING.—Whatever may be the true view as to effect of a bill of lading when no goods were delivered to carrier, yet where the question is one of shortage in the number of packages received by the carrier in an admitted shipment, the representations of the carrier's agent that a specific number of packages were received is conclusive upon the carrier as between the carrier and consignee or transferee of the bill of lading, who has incurred loss or liability in reliance upon the correctness of the representations.

2. REHEARING refused.

Before PRINCE, J., Sumter, November, 1907. Affirmed.

Action by Frank E. Thomas, against Atlantic Coast Line Railroad Company. From judgment for plaintiff, defendant appeals.

*Mr. P. A. Willcox* and *Mark Reynolds,* for appellant. *Mr. Reynolds* cites: *Bill of lading may be explained,* 6 Cyc., 416, 421; 1 Green Ev., sec. 305; 4 Ell. on R. R., sec. 1419; 1 Hutch. on Car., sec. 158; 23 Fla., 463; 61 Am. St. R., 253; 1 Bail., 174; 27 S. C., 376; 9 S. C., 92; 130 U. S., 416; 4

Ency., 526; 96 S. W., 488; 7 Current L., 1543; 9 L. R. A., 268; 38 Am. D., 410.

Mr. L. D. Jennings, contra, cites: *Character of bill of lading:* 4 L. R. A., 246; 75 U. S., 325; 2 Ency., 531.

The opinion in this case was filed April 9, 1909, but held up on petition for rehearing until

April 25, 1910. The opinion of the Court was delivered by

Mr. Chief Justice Jones. In this case the Circuit Court affirmed the judgment of a magistrate Court awarding to plaintiff $27.00, the value of one ton of cotton seed meal alleged to have been lost out of a shipment of thirty tons of cotton seed meal over defendant's line, the judgment also including $50 penalty under an Act of February, 1903, for not adjusting and paying the claim within the time required by law.

On January 10, 1907, at Columbia, S. C., the defendant issued to the South Carolina Cotton Oil Co. its bill of lading reciting that it had received from the South Carolina Cotton Oil Co., 600 sacks of meal in apparent good order to be delivered in like good order to plaintiff at Wedgefield, S. C. The defendant received the car containing the shipment from the shipper at Columbia under the shipper's seal and without counting the sacks. The car reached Wedgefield on January 12th, 1907, and on Monday, the 14th, was turned over to the plaintiff, after the defendant's agent at Wedgefield had broken the seal and delivered ten sacks to one whom he believed was authorized by the consignee to receive it. The consignee testified that he had not authorized the delivery to such person. When the consignee took charge of the car, according to the evidence submitted in his behalf, there were only 569 sacks of cotton seed meal therein, which with the ten sacks delivered by defendant's

agent made 579 sacks, or 21 sacks less than the amount called for in the bill of lading. Plaintiff filed a claim with defendant for twenty sacks shortage, amounting to $27.00, and defendant failing to pay within forty days, plaintiff brought suit for recovery of that sum and the penalty.

The magistrate charged the jury that "as between the common carrier and the shipper the bill of lading is not conclusive as to the quantity of goods received and parol testimony may be introduced to show that a less quantity has been received, but it cannot prevent the party who is to receive the goods from recovering what he loses from the common carrier," and declined to charge that the bill of lading was merely *prima facie* evidence as to the quantity of goods received, the issue being between the consignee for value and the carrier. When the jury came back for further instructions, the magistrate in answer to an inquiry from the jury instructed them: "If the plaintiff Thomas proves that he lost the meal, then I charge you that the railroad company is responsible for the loss." In view of the frank admissions of counsel and the circumstances, this last language of the magistrate is to be construed as meaning only to make the defendant responsible for the shortage between the quantity named in the bill of lading and the quantity delivered to the consignee.

The real question raised by the exceptions is whether a bill of lading issued by a carrier to the shipper and transferred to the consignee for value is as between the consignee and the carrier conclusive evidence as to the receipt by the carrier of the quantity of goods therein mentioned, or is it only *prima facie* evidence thereof?

A bill of lading is regarded as having a two-fold character, as a receipt for goods delivered and as a contract for their shipment. In so far as it may be treated as a mere receipt, it is generally held that as between the original parties it is not conclusive but it is only *prima facie* evidence of

the truth of its recitals and may be varied or contradicted by parol. Whether as between the carrier and the consignee or transferee, not original parties thereto, the recitals as to the receipt of goods is conclusive is a matter of considerable controversy. There is much authority in other jurisdictions for the view that when no goods have in fact been delivered for shipment a bill of lading issued by the carrier's station agent is not conclusive evidence of the receipt of the goods even in the hands of a *bona fide* consignee or purchaser for value, whether the bill of lading was issued by mistake or collusively with the shipper. Such seems to be the law in England, *Grant* v. *Norway,* 70 E. C. L., 665, and is the rule of the Supreme Court of the United States, *Pollard* v. *Vinton,* 105 U. S., 7; *Friendlander* v. *Texas etc. R. R. Co.,* 120 U. S., 416. This doctrine is adopted in several States, *Fellows* v. *Steamer Powell* (La.), 79 Am. Dec., 581; *B. & O. R. R. Co.* v. *Wilkins* (Md.), 22 Am. Rep., 26; *Black* v. *Wilmington etc. R. R. Co.* (N. C.), 53 Am. Rep., 450; *National Bank of Commerce* v. *Chicago etc. R. R. Co.,* (Minn.), 9 L. R. A., 263. The reasons for this view rest mainly on the ground that it is not within the real or apparent authority of the carrier's agent to issue a bill of lading for goods not received, and that a bill of lading not being itself negotiable, the holder can take no better right nor higher equity thereunder than the consignee or shipper.

The contrary view is taken in other States with strong show of reason, *Bank of Batavia* v. *New York etc. R. R. Co.* (N. Y.), 60 Am. Rep., 440; *Sioux City & Pacific R. R. Co.* v. *First National Bank of Fremont* (Neb.), 35 Am. Rep., 488; *Brooke* v. *New York etc R. R. Co.,* 108 Penn., 529, reported in note to 53 Am. Rep., 452; *American National Bank* v. *Georgia R. R. Co.* (Ga.), 23 S. E. Rep., 898. The reasons for this view are mainly, that the question is not one of negotiability of the instrument but one of estoppel *in pais,* that the carrier has clothed the agent with apparent authority to issue a bill of lading; that the agent

having done so with full knowledge or full opportunity to know what, if any, goods are intended for shipment, the principal should be estopped to deny the truth of the recitals as to goods covered thereby, that it is better to cast the loss upon the carrier whose agent made the false representation than upon an innocent holder of the bill of lading who relied upon the representation, that while not strictly negotiable a bill of lading is *quasi* negotiable, symbolizing the property described therein, and that title thereto passes by its transfer or delivery, and that it is in the highest degree important to the large commerce, known by the carrier to be built upon the transfer of bills of lading, that there should be confidence in their recitals.

Whatever may be the true view as to the effect of a bill of lading when no goods were delivered to the carrier, we think that in a case like this when goods were delivered and the question is one merely of shortage in the number of packages in an admitted shipment, the representation of the defendant's bill of lading that a specific number of packages was received, without any qualification, is conclusive upon the carrier as between the carrier and the consignee or transferee of the bill of lading who has incurred loss or liability in reliance upon the correctness of the representation. It cannot be said that the issuance of the bill of lading was not within the scope of the authority of defendant's agent. It was the duty of defendant's agent to check the number of separate packages received for shipment, and if the agent chose to accept the shipper's count as his own, the loss should fall upon the carrier who gave the agent authority to issue the bill of lading rather than upon the innocent consignee or transferee who relied upon the recitals therein. Note to *Chandler* v. *Sprague,* 38 Am. Dec., 414.

This latter view is supported by our own cases. In *Benjamin* v. *Sinclair,* 1 Bail., 174, the Court held, in an action by the master of a vessel against a consignee for freight, that the recital in a bill of lading that the goods were

shipped "in good order and well conditioned" could not be contradicted by testimony showing that externally the goods were not in good order, there being no evidence of fraud or imposition. The representation as to the external condition of the goods shipped is not in principle different from a representation as to the number of packages shipped.

In *Sanford* v. *Ry.*, 79 S. C., 522, 61 S. E., 74, a case involving a claim for statutory penalty of $5.00 per day for delay in shipment, the Court held that when a carrier issues a bill of lading for a car of freight it cannot be heard to say that it did not have possession of the car at the time of issuing the bill of lading, although it alleged that the car was not received by it until about twenty days after the date of the bill of lading.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.

April 25, 1910. PER CURIAM. After careful consideration the Court fails to discover that any material matter of law or fact has been overlooked or disregarded.

The case at folio 8 shows that the plaintiff was required by defendant to pay freight on the number of sacks of meal represented in the bill of lading without qualification to be six hundred, and at folio 11 it appears that plaintiff was responsible for the meal. Hence the Court was authorized to consider plaintiff as a consignee for value, or one who had incurred loss and liability as consignee.

It is, therefore, ordered that the petition herein be dismissed, and the order heretofore granted staying remittitur be revoked.