ALEXANDER ECCLES & CO. v. LOUISVILLE & N. R. CO.

(District Court, N. D. Alabama, N. E. D.   August 2, 1912.)

No. 1,836.

PRINCIPAL AND AGENT (§ 177*)—LIABILITIES AS TO THIRD PERSONS—NOTICE
TO AGENT.

An agent of a railroad company having no authority to issue bills of lading except for property actually received for shipment cannot ratify the act of another in issuing such bills in the name of the company, nor will his knowledge of a custom on the part of such another to issue bills in advance of the receipt of the goods charge the company with notice of such custom so as to render it liable to one defrauded by false bills of lading so issued, where the agent was a party to the fraudulent transactions.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670–679; Dec. Dig. § 177.*]

At Law. Action by Alexander Eccles & Company against the Louisville & Nashville Railroad Company. On motion of plaintiff for new trial. Motion denied.

Harrington, Bigham & Englar, of New York City, and Percy, Benners & Burr, of Birmingham. Ala., for plaintiff.

Gregory L. Smith, of Mobile, Ala., and Eyster & Eyster, of New Decatur, Ala., for defendant.

GRUBB, District Judge. The plaintiff relied in support of its motion for a new trial exclusively upon its exception to the following portion of the court's oral charge to the jury:

"One principle of law I omitted to call your attention to in my charge. I said that notice to Bywater of irregularities that might be sufficient to charge him with knowledge that these were spurious bills of lading of the character the evidence disclosed if he were the proper kind of agent, that is, one authorized to receive the notice, would be notice to the company. I want to qualify that to this extent: Where an agent himself commits fraud, as for instance in this case suppose you are reasonably satisfied from the evidence the fact to be that Bywater and Knight conspired to commit this fraud, then Bywater would be the guilty agent, and in that event notice to him under any circumstances, as I understand the law, would not be notice to the defendant, because the law says that it could not be presumed that the guilty agent would communicate the notice to any other officer of the defendant. You see what I mean. If Knight was running this scheme by himself, not in collusion with Bywater, and Bywater received notice of this kind, then the notice to Bywater, under the qualifications I before stated, might be notice to the company, because in that case Bywater would not be a co-conspirator, and it would be presumed he would do his duty, and notice to him would be notice to the company; but, on the other hand, if you should be persuaded from the evidence that Bywater and Knight were in collusion, and that Bywater was committing a fraud, as well as Knight, then notice to Bywater would be no benefit to the company, because the presumption would be, as Bywater was committing a fraud of his own, he would not give the defendant any benefit of notice he received; in other words, he would conceal the notice just like he did the crime."

The correctness of this part of the court's charge depends upon the issues that were submitted to the jury.

The action was one for deceit, predicated upon the false representa-

tions contained in certain purported bills of lading of defendant that the cotton therein described had been received by the defendant, when in fact it had not been so received. The liability of the defendant depended upon whether this confessedly false recital in bills of lading was or was not its representation. If the bills of lading containing it were its bills of lading, the representations therein would be its representations, and vice versa. The bills of lading were signed in its name by John W. Knight, a cotton shipper, who was not its agent. Authority to sign the bills of lading for defendant was claimed by Knight to have been derived from defendant's foreign freight agent, Bywater. Under the authority of the case of Friedlander v. T. & P. R. R. Co., 130 U. S. 416, 9 Sup. Ct. 570, 32 L. Ed. 991, the jury was instructed that Bywater had no power to authorize Knight to issue bills of lading for the defendant for cotton not contemporaneously received by it and of the delivery of which to it there was then no present expectation, and that bills of lading issued by Knight under such claimed authority would not bind defendant, nor would the representations contained in them be the defendant's representations.

In order to fasten liability upon defendant, the court charged the jury that the plaintiff would have to show a course of business relating to such bills of lading, continued so long and under such circumstances as to impute to defendant knowledge of their issue by Knight before receipt of the cotton and acquiescence therein; and that in that event only would the bills of lading so issued by Knight be the defendant's bills of lading and fix responsibility upon it for the false representations contained in them. From such a course of business, knowledge on the part of responsible agents of defendant would be presumed, even in the absence of a showing of actual knowledge on their part; and it was on this alone that the case was submitted to the jury.

Actual notice of the course of business to defendant would avail as well as presumptive notice. Actual notice of a kind to displace presumptive notice would have to be fastened upon defendant through an agent authorized to bind it. The court charged the jury that, as Bywater had no authority to issue or cause to be issued on defendant's behalf bills of lading in the absence of the receipt of the cotton, notice to him alone, of all defendant's agents or officers, that such bills of lading were being so issued by Knight on his supposed authority, could not amount to a ratification by defendant, since Bywater, being without authority to issue or cause them to be issued, was likewise without authority to ratify by subsequent knowledge or acquiescence what he could not have originally authorized to be done.

If the court was correct in holding that Bywater was without authority to issue or cause to be issued bills of lading without receipt of cotton, it seems clear that the court was also correct in charging the jury that no knowledge on Bywater's part of transactions of like character, if confined to him alone, would amount to a ratification by defendant of such a course of business, since Bywater, being without authority to issue them or cause them to be issued, could not by

subsequent knowledge and acquiescence ratify for defendant what he was without authority to authorize.

If inquiry had been made through Bywater of defendant by plaintiff as to the validity of the bills of lading, the basis of the suit, and in the performance of defendant's duty, to give such information to plaintiff, Bywater, as its authorized agent in answering such inquiry, had certified to their validity when he knew of their invalidity, a different case would have been presented and one like those relied on by plaintiff. Bywater's knowledge would then have been defendant's knowledge, since defendant was, through him, performing a duty resting upon it, and, having delegated to him the performance of this duty, it could not escape the consequences of his knowledge in the particular transaction.

In this case, on the contrary, Bywater was in no way concerned in the transactions involved in the suit. No inquiry was made of him by plaintiff, nor was anything he did or said influential in inducing the plaintiff to take the bills of lading as genuine. So far as is shown by the record, neither Bywater nor any other agent of defendant knew of the issue or existence of the specific bills of lading relied upon by plaintiff for its cause of action until long after plaintiff had accepted the drafts on the faith of their genuineness. The defendant therefore failed to perform no duty it owed plaintiff with reference to these bills of lading through Bywater's act or default.

So that the only relevancy the question of Bywater's knowledge could have had in the case would have been to fasten knowledge of the course of business on defendant, and thus make it responsible by ratification and acquiescence for what, for want of authority in Bywater, it was not responsible in its inception. But Bywater's knowledge, if proven, was insufficient for this purpose, since he, as agent, could not ratify an act which he was without power to have authorized. For this reason it seems to me that Bywater's knowledge, uncommunicated to any of his superior officers in defendant's service, could not have improved plaintiff's right to recover whether he was or was not a guilty conspirator with Knight. If so, clearly the part of the charge excepted to was even more favorable to plaintiff than it was entitled to, since the court was right in charging, as it had done in a previous part of the oral charge, that the knowledge of the course of business on Bywater's part, if no other agent of defendant had such knowledge, could not constitute a ratification and could not avail to make the bills of lading defendant's act and the representations therein contained defendant's representations.

However, it is a well-recognized principle of law that knowledge of a fraud, acquired by an agent in the commission of a fraud in conspiracy with another upon his principal alone or upon his principal and a third person, does not charge the principal with notice, since the agent is acting adversely to his principal, and it will not be presumed that such knowledge will be communicated to the principal or used for his benefit.

This principle is thus stated in the case of American Surety Co. v. Pauly, 72 Fed. 470-483, 18 C. C. A. 644, 656 (quoted with ap-

proval by Supreme Court, s. c., 170 U. S. 159, 18 Sup. Ct. 563, 42 L. Ed. 987):

"When two or more officers of a corporation have entered into a scheme to purloin the money of the corporation for the benefit of one of them, in pursuance of which scheme it becomes necessary to make false representations to a third person, ostensibly for the bank but in reality to consummate said scheme, and for the benefit of the conspirators, and not in the line of ordinary routine business of such officers and without express authority—the corporation being ignorant of the fraud—the officers are not, in thus consummating such theft, the agents of the corporation."

In the same case the Supreme Court of the United States (170 U. S. 133, 156, 157, 18 Sup. Ct. 552, 561 [42 L. Ed. 987]) said:

"The presumption that the agent informed his principal of that which his duty and the interests of the principal required him to communicate does not arise where the agent acts or makes declarations, *not in execution of any duty he owes to the principal*, nor within any authority possessed by him, but to subserve simply his own personal ends or to commit some fraud against the principal. In such cases, the principal is not bound by the acts or declarations of the agent unless it be proved that he had at the time *actual notice* of them, or, having received notice of them, failed to disavow what was allowed to be said and done in his behalf."

And again (syllabus, page 134 of 170 U. S. [18 Sup. Ct. 552, 42 L. Ed. 987]):

"When an agent has in the course of his employment been guilty of an actual fraud contrived and carried out for his own benefit, by which he intended to defraud and did defraud his own principal or client, as well as perhaps the other party, and the very perpetration of such fraud involved the necessity of concealing the facts from his own client, then under such circumstances the principal is not charged with constructive notice of facts known by the attorney and thus fraudulently concealed."

In the case of Union Central Life Insurance Co. v. Robinson, 148 Fed. 358, 78 C. C. A. 268, 8 L. R. A. (N. S.) 883, the Circuit Court of Appeals for the Fifth Circuit said:

"The rule has no application to a case where the agent is acting for himself, in his own interest, adversely to his principal. In such case the adverse character of his interest takes the case out of the operation of the general rule, because: First, he will be likely in such case to act for himself rather than for his principal; and, secondly, he will not be likely to communicate to the principal a fact which he is interested in concealing. It would be therefore both unjust and unreasonable to impute notice by mere construction under such circumstances."

In the case of Hudson v. Randolph, 66 Fed. 216, 222, 13 C. C. A. 402, 408, the same Court of Appeals said:

"In the case of Investment Co. v. Ganzer, 63 Fed. 647 [11 C. C. A. 371], on a review of the authorities it was held that, although as a general rule the principal is bound by the knowledge of his agent and by his acts within the scope of his authority, the principal is not bound by the uncommunicated knowledge of his agent, where the agent and parties dealing with him have colluded for fraudulent purposes, for in such cases the agent cannot be presumed to have communicated his own delinquency to the principal."

In the case of Thomson-Houston Electric Co. v. Capital Electric Co. (C. C.) 56 Fed. 849, Circuit Judge Lurton said:

"The general rule is that the principal is charged with the agent's knowledge, affecting the particular transaction. This rule is, however, subject to

some limitations. One of these exceptions, as stated by Mr. Pomeroy, is this: 'It is now settled by a series of decisions possessing the highest authority that when an agent or attorney has, in the course of his employment, been' guilty of an actual fraud, contrived and carried out for his own benefit, by which he intended to defraud and did defraud his own principal or client, as well as, perhaps, the other party, and the very perpetration of such fraud involved the necessity of his concealing the facts from his own client, then, and under such circumstances, the principal is not charged with constructive notice of facts known by the attorney, and thus fraudulently concealed. In other words, if, in the course of the same transaction in which he is employed, the agent commits an independent fraud for his own benefit, and designedly against his principal, and it is essential to the very existence or possibility of such fraud that he should conceal the real facts from his principal, then the ordinary presumption of a communication from the agent to his principal fails; on the contrary, a presumption arises that no communication was made, and consequently the principal is not affected with constructive notice. The courts have carefully confined the operation of this exception to the condition described, where a presumption necessarily arises that the agent did not disclose the real facts to his principal, because he was committing such an independent fraud that concealment was essential to the perpetration. It has never been extended beyond these circumstances. It follows therefore that every fraud of an agent in the course of his employment, and in the very same transaction, does not fall within this exception; and most emphatically it does not apply when the agent's fraud consists merely in his concealment of material facts within his own knowledge from his principal.' "

It is clear from these citations that the exception to the general rule is recognized by the federal courts.

The plaintiff relies on the case of Armstrong v. Ashley, 204 U. S. 272, 27 Sup. Ct. 270, 51 L. Ed. 482. That was a suit by the receiver of a building and loan company to fasten a lien on the lands of the defendant for money loaned to one Bradshaw, who claimed title to the lands but did not, in fact, have it. The attorney for the association sent a defective chain of title to the association, which omitted the conveyances which vested title in defendant. It was asserted by the plaintiff that the association was not chargeable with the attorney's knowledge of the conveyances, since he purposely and fraudulently concealed his knowledge of them, while actually in collusion with Bradshaw and in order to enable Bradshaw to wrongfully secure the loan. The association, however, was charged with constructive notice of the conveyances from the record, and clearly the mere fact that its investigating attorney either negligently or purposely failed to report his knowledge of them to his principal could not do away with the effect of the constructive record notice with which it was already chargeable, as against the true owner of the property. That there is no analogy between this case, on the one hand, and those previously cited and the one at bar, upon the other, is clear.

The plaintiff also relies upon the case of Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 97, 6 Sup. Ct. 657 (29 L. Ed. 811). The principle of this case is stated in the second paragraph of the syllabus as follows:

"If a depositor in a bank delegates to a clerk the examination of his written-up passbook and paid checks returned therewith as vouchers, without proper supervision of the clerk's conduct in the examination, he does not so

discharge his duty to the bank as to protect himself from loss, if it turns out that without his knowledge the clerk committed forgery in raising the amounts of some of those checks, and thereby misled the bank to its prejudice in spite of due care on the part of its officers."

It clearly appears that the principle relied upon by the court rests upon the existence of a duty the depositor owes the bank to examine his canceled checks and report to the bank any irregularity in them. On page 113 of 117 U. S., on page 663 of 6 Sup. Ct. (29 L. Ed. 811), the court, after quoting from Lord Campbell's opinion in the case of Cairncross v. Lorimer, 3 Macq. 827, that "if a party having an interest to prevent an act being done acquiesces in it, so as to induce a reasonable belief that he consents to it, and the position of others is altered by their giving credit to his sincerity, he has no more right to challenge the act to their prejudice than he would have if it had been done by his previous license," applying the principle quoted to the instant case, said:

"This, however, could not be if, as claimed, the depositor was under no obligation whatever to the bank to examine the account rendered at his instance and notify it of errors therein in order that it might correct them and if necessary take steps for its protection by compelling restitution by the forger."

Clearly the liability of the depositor was rested by the court upon the existence of a duty on his part to examine his vouchers and report irregularities in them to the bank. Delegating this duty to a clerk, who purposely or negligently failed to perform it, would not excuse the depositor as against third persons injured thereby in whose favor the duty existed.

The same distinction exists between the case at bar and that of First National Bank v. Allen, 100 Ala. 476, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80. In that case, as in the Leather Manufacturers' Bank Case, there was a failure on the part of the depositor to perform the duty he owed the bank of examining his canceled checks and reporting to the bank the irregularities in them. The delegation of this nondelegable duty to an agent who failed to perform it, regardless of motive, would not as to third persons excuse the principal for his failure.

The case of Hennessy Bros. & Evans Co. v. Memphis National Bank, 129 Fed. 557, 64 C. C. A. 125, relied on by plaintiff, was likewise a passbook case, and to be distinguished from this case for the same reason.

The plaintiff relies on the case of Cook v. American Tubing & Webbing Co., 28 R. I. 41, 65 Atl. 641, 9 L. R. A. (N. S.) 193, for the principle that, where an agent is the sole representative of his principal in a transaction entrusted to him by the principal, his knowledge is that of the principal, though he is engaged in defrauding his principal. In that case the president of a bank was discounting a note for the bank, in the discount of which he was himself interested, and in so doing defrauded the bank, as the note was accommodation paper of a corporation and not binding upon it. That case is easily distinguished from the case at bar. In it the agent was performing a duty for his principal which was intrusted to

him and which he was authorized to perform for it, viz., the discounting of commercial paper. In the case at bar, Bywater was performing no duty for defendant, but, if plaintiff's theory of the facts is a correct one, had departed from his duty and authority and was engaged in a private conspiracy to defraud by forged and false and fictitious bills of lading, purporting to be defendant's. In the case at bar there were no transactions between the plaintiff and defendant in which Bywater was the sole representative of the defendant. In fact, there were no transactions between them at all. The issue of the bills of lading was a mere fiction and not a transaction on defendant's part. Friedlander v. T. & P. R. R. Co., supra. In the case relied upon, the court said of the case of First National Bank v. New Milford, 36 Conn. 93:

"The court, however, doubted whether the whole transaction represented any valid contract, as the agent for both parties intended it merely as a subterfuge, expecting to take up the note without recourse to the maker, but held that if there was a contract of loan the knowledge of its fraudulent nature was imputable to the bank."

The test of liability was made, the existence of a real transaction in which the bank was represented by the defrauding agent.

Of the Alabama case of Hall & Brown Co. v. Haley Co. (Sup.) 56 South. 726, it is enough to say that it involved no question of conspiracy to defraud the principal upon the part of the agent, but only the effect of knowledge which the agent had acquired before the beginning of the agency. Any language used by the court in such a case, upon the other question, would be dictum merely.

The cases of Terrell v. Branch Bank of Mobile, 12 Ala. 502–507, and Frenkel v. Hudson, 82 Ala. 158, 2 South. 758, 60 Am. Rep. 736, show that the same exception to the general rule prevails in Alabama as in the federal courts. In the latter case, the Supreme Court of Alabama, speaking of the general rule and its exception, said:

"It has no application, however, to a case where the agent acts for himself, in his own interest and adversely to that of his principal. His adversary character and antagonistic interests take him out of the operation of the general rule for two reasons: First, that he will very likely in such case act for himself rather than for his principal; and, secondly, he will not be likely to communicate to the principal the fact which he is interested in concealing. It would be both unjust and unreasonable to impute notice by mere construction under such circumstances, and such is the established rule of law upon the subject."

It seems quite apparent that the exception to the general rule is recognized both in the federal court and in the Alabama court. It does not apply in either forum to cases in which the principal is charged with the performance of a duty to the person injured, the performance of which he undertakes to delegate to an agent, who negligently or willfully fails to perform it. In such case liability upon the principal ensues, not upon the idea of notice, but because the duty the agent failed rightly to perform was the nondelegable duty of the principal, the nonobservance of which he

could not excuse as to third persons by saying that he had intrusted its performance to his own agent.

The case at bar is not of this class. If an inquiry had been made of Bywater by plaintiff as to the validity of the bills of lading involved in the suit before taking them, and Bywater, in response to such inquiry which it was the defendant's duty to have answered, with knowledge of their infirmity, had falsely represented them to be genuine or had fraudulently concealed their infirmity from the inquirers, the defendant, being under a duty to disclose such invalidity to the prospective holder, would have been liable for the failure of its agent, though without knowledge of such infirmities except through him. This was the case of the warehouseman decided by Judge Shelby. Commercial Nat. Bank v. Nacogdoches Compress & Warehouse Co., 133 Fed. 501, 66 C. C. A. 375. On the contrary, in the case at bar no inquiry was made by the plaintiff of Bywater as to the validity of any of the bills of lading which are the basis of the suit. Neither Bywater nor the defendant is shown to have had any knowledge of their existence before they were negotiated to plaintiff, nor was any action required or taken by him or it with reference to them.

The case is therefore not one of a failure on defendant's part to perform a duty owing by it to plaintiff at all, for no duty existed calling for performance by defendant or its agent Bywater.

In this case the plaintiff contended, and there was evidence from which the jury might possibly have inferred, that Bywater and Knight had colluded and conspired together to issue fraudulent bills of lading in defendant's name; no cotton having been delivered to it. It was to meet this tendency of the evidence that the part of the charge excepted to was given. The plaintiff contends that the evidence without conflict showed that Bywater acted not in hostility to defendant, but in its interest, because it says his motive in engaging in the fraudulent conspiracy was to increase the defendant's business. If such a conspiracy existed, the motive which induced Bywater to engage in it is purely a matter of conjecture. It may have been, so far as appears from the record, to increase defendant's business and in this way indirectly benefit himself, or to share in the profits of the conspiracy with Knight. The presumption would be that one who commits a crime does so in his own interest. Whatever may have been Bywater's motive, it is clear that he could not engage in a conspiracy to defraud, the commission of which amounted to a felony, on behalf of his principal but without its knowledge or consent. As well might it be said that an agent who assumed to steal with the purpose of turning over the proceeds of his theft to his principal, but without its knowledge or consent, was acting in its interest. Unless the principal authorized or accepted the benefit of the crime committed by its agent, it could not be said to be committed for its benefit.

The plaintiff also contends that the exception to the general rule is limited to cases in which the agent defrauds the principal, and does not apply to cases in which he defrauds a third person. For

the sake of argument, the limitation may be admitted. A conspiracy to issue bills of lading, purporting to be those of defendant, though a forgery of its agent's signature, and for which no property had been received by it, is a fraud on the defendant, without regard to legal liability of defendant upon bills of lading so issued. The forger of another's name to a promissory note commits a fraud on the supposed maker, though the maker cannot be held upon the forged note.

The plaintiff seeks to exclude this case from the exception to the rule because "notice to the agent of matters lying within the general scope of his authority is notice to the principal, even though the agent may be engaged in committing frauds or crimes." This is but another way of stating the limitation that when an agent is engaged in performing a duty for his principal his knowledge binds the principal in the transaction involved in its performance. If Bywater did conspire with Knight to issue false and forged bills of lading, he had departed from his duty and was acting beyond the scope of his authority, and his acts, if fraudulent, were not those of his principal, and his principal could not be bound by his knowledge. The record does not show that Bywater was charged with or was engaged in the performance of any duty of defendant in respect to the bills of lading on which the suit was based, nor that he had any duty with reference to the issue of bills of lading at all, nor the detection of frauds therein, except the general duty of any employé to report to his master any wrongdoing against his master that he may become aware of.

The plaintiff also contends that Bywater was the alter ego of defendant in that he had sole and exclusive charge of its foreign freight business, and hence his knowledge was its knowledge, though obtained in fraudulent transactions where his interest was adverse to his principal. The record does not bear out any such extent of authority. Bywater had exclusive charge of the solicitation and booking of freight for export with the usual authority in other matters of soliciting agents at important stations for domestic freight, and no more. If his authority was such as to make him the alter ego of defendant, he would have been clothed with authority to direct Knight to issue bills of lading for defendant, and, if so, the question of the effect of his subsequent knowledge upon defendant would be of no importance, since the bills of lading issued by Knight in defendant's name by his direction would then have been defendant's bills of lading and binding upon it, and no resort to notice to fasten liability would be necessary.

For these reasons, the court is of the opinion that there was no error in the part of the charge excepted to both because Bywater being without power to authorize Knight to issue, for defendant, fraudulent and forged bills of lading, his knowledge thereof, whether he was a co-conspirator with Knight or not, could not avail to ratify for defendant that which he was without power to authorize for it; and also because there was evidence tending to show that he was a co-conspirator, and, if he was, then his knowledge,

acquired while the conspiracy was being pursued and while he was engaged in a fraud of his own upon his principal, and when he was performing for the defendant no duty the defendant owed plaintiff, would not be knowledge of the defendant or fasten liability upon it.

The motion for a new trial is denied.