### GLEASON v. BAMBERG E. & W. RAILWAY CO.

#### (117 S. E., 188)

CARRIERS—CONSIGNEE CAN RECOVER ADVANCES MADE ON DUPLICATE BILL OF LADING.—Where carrier by mistake gave shipper two bills of lading for a single interstate shipment of cotton, and consignee made advances on the duplicate bill of lading, consignee can recover such advances from carrier.

Before DEVORE, J., Bamberg, March, 1922. Reversed and new trial ordered.

Action by John W. Gleason, doing business as Gleason Cotton Company, against Bamberg, Ehrhardt & Walterboro Railway Company. Judgment for defendant and plaintiff appeals.

*Mr. E. H. Henderson,* for appellant, cites: *If shipment had been intrastate case would have been governed by* 85 S. C., 537; 89 S. C., 415; 99 S. C., 187; 79 S. C., 519. *Being an interstate shipment, it is governed by Federal legislation and decisions:* Act August 29, 1916; 39 Stat., 538–45; Barnes Fed. Code, Sections 7978–8022; 214 U. S., 319; Rule prior to 1916; 154 U. S., 155; 130 U. S., 416; 105 U. S., 7. *Plaintiff had interest and ownership in cotton as a factor under Georgia law:* 63 S. E., 1115; 81 S. E., 130; 88 S. C., 558; 23 Wall., 35. *Meaning of "owner":* 38 S. C., 37; 59 S. C., 375; 84 S. C., 306; 111 S. C., 115; 29 Cyc., 1550. *Consignee presumed to be*

*owner:* 75 S. C., 324; 79 S. C., 519; Hutch., Car., 101, Paragraph 573. *Construction of Statute:* 36 Cyc., 1110; 67 S. C., 317. *Estoppel can be proven without having been plead:* 27 S. C., 226; 81 S. C., 329; 93 S. C., 190; 95 S. C., 328. *Reply improper as there was no counterclaim:* Code Proc. 1912, Sec. 203; 27 S. C., 235; 21 C. J., 1235; 31 Cyc., 755.

*Mr. R. P. Bellinger,* for respondent, cites: *Bill of lading is only a receipt and subject to explanation:* 85 S. C., 537; 1 Bail., 174; 105 U. S., 7; 120 U. S., 416; 99 S. C., 187; 94 S. C., 416; 6 Cyc., 416; 106 S. E., 226; 95 S. E., 777; 53 Am. Rep., 450; 1 Greenl., Ev., Sec. 305; 4 R. C. L., Sec. 29.

April 12, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for the value of six bales of cotton. The plaintiff is a commission merchant. He received from a customer a bill of lading for six bales of cotton. The plaintiff entered the cotton on its books and paid the customer's draft on account. The cotton was not received. The shipment was from Ehrhardt, S. C., to Savannah, Ga. The defendant undertook to show that the cotton was not shipped; i. e., there were two bills of lading made out by mistake to cover one shipment. This they were allowed to do, and the presiding Judge charged the jury that, if the cotton was not in fact shipped, the railroad is not liable. It is not denied that cotton was shipped and advances made on the faith of what may be designated as a duplicate bill of lading.

So far as we know (and no cases have been cited), the Federal Courts have not construed the Federal statute on this subject. There are cases to the contrary elsewhere, but, until the Federal Courts have spoken, we must follow our own cases.

In *Thomas v. Railroad Company,* 85 S. C., 541; 64 S. E., 221; 34 L. R. A. (N. S.), 1177; 21 Ann. Cas., 223, we find:

"Whatever may be the true view as to the effect of a bill of lading when no goods were delivered to the carrier, we think that in a case like this, when goods were delivered and the question is one merely of shortage in the number of packages in an admitted shipment, the representation of the defendant's bill of lading that a specific number of packages were received, without any qualification, is conclusive upon the carrier as between the carrier and the consignee or transferee of the bill of lading who has incurred loss or liability in reliance upon the correctness of the representation. It cannot be said that the issuance of the bill of lading was not within the scope of the authority of defendant's agent. It was the duty of defendant's agent to check the number of separate packages received for shipment, and, if the agent chose to accept the shipper's count as his own, the loss should fall upon the carrier who gave the agent authority to issue the bill of lading rather than upon the innocent consignee or transferee who relied upon the recitals therein. Note to *Chandler v. Sprague,* 38 Am. Dec., 414."

This is not a case in which no goods were received. There were duplicate bills of lading for cotton actually received.

The judgment is reversed, and a new trial ordered.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (dissenting): Action for damages resulting from the breach of a contract of carriage, evidenced by a bill of lading covering six bales of cotton, alleged to have been delivered by one S. W. Copeland at Ehrhardt, S. C., for transportation and delivery to the plaintiff, John W. Gleason, doing business in Savannah,

Georgia, under the style of John W. Gleason Cotton Company, on October 11, 1919.

The plaintiff alleges in the simplest form conceivable that on October 11, 1919, at Ehrhardt, South Carolina, S. W. Copeland delivered to the defendant six bales of cotton; that the defendant received the same; that it issued a bill of lading therefor; that it agreed to safely transport and deliver the cotton to the plaintiff at Savannah, Georgia; that it failed in that obligation, has never delivered the cotton to plaintiff, and, though demand therefor has been made upon the defendant, it has converted the same, to plaintiff's damage $1,506.80.

The answer of the defendant is a general denial.

The evidence in support of the plaintiff's alleged cause of action is meagerly set forth in the "case," but, so far as it goes, it tends to establish these facts:

The plaintiff was a cotton factor doing business in Savannah. One S. W. Copeland, at Ehrhardt, South Carolina, was a customer of the plaintiff. During the fall of 1919 Copeland shipped upon straight bills of lading, at various times, 77 bales of cotton. On October 11, 1919, Copeland received from the agent of the defendant company at Ehrhardt, S. C., a bill of lading for six bales of cotton, numbered 23, 24, 25, 26, 27, 28, consigned to the plaintiff at Savannah. On October 14th, the plaintiff received by mail the bill of lading from Copeland, and advanced money to him upon it. The cotton covered by the bill of lading was never delivered to the plaintiff.

The defendant, upon cross-examination of the witnesses for the plaintiff, offered evidence tending to show that no part of the cotton called for in the bill of lading had in fact been delivered by Copeland to the railroad company; that by some error the agent issued two bills of lading covering the identical six bales, numbered as above stated. The plaintiff testified that he had received in all 77 bales, and Copeland testified that he had shipped only 77 bales.

The inference is irresistible from these facts that the defendant's contention is correct. This evidence was objected to by the plaintiff upon the ground that the defendant was estopped by its bill of lading from claiming that it had not received the cotton. The objection was overruled by the presiding Judge.

The presiding Judge submitted the case to the jury upon the issue whether or not the railroad company received the cotton for shipment. They found a verdict in favor of the defendant, and the plaintiff appeals.

The exceptions, four in number, raise practically the single issue of law whether or not by issuing the bill of lading, which was transferred to the plaintiff, and upon which he advanced money, the defendant is estopped from claiming that it had not received the cotton.

The bill of lading evidencing the contract between the parties covering a supposed shipment from Ehrhardt, S. C., to Savannah, Ga., concerned a transaction of interstate commerce, and all questions of the rights, duties, and obligations of the several parties interested, as well as all presumptions of law, are to be referred to Federal legislation and decisions upon the subject.

"Interstate shipments are entirely controlled by the provisions of this statute, by the bill of lading which it requires to be issued, and by the common law rules as accepted and applied in Federal tribunals, without regard to the rules of the State Courts theretofore prevailing." *St. Louis, etc., R. Co. v. Patterson,* 75 Okl., 204; 182 Pac., 701, citing *Adams Exp. Co. v. Croninger,* 226 U. S., 491; 33 Sup. Ct., 148; 57 L. Ed., 314; 44 L. R. A. (N. S.), 257; *Kansas City, etc., R. Co. v. Carl,* 227 U. S., 639; 33 Sup. Ct., 391; 57 L. Ed., 683; *M., K. & T. Ry. Co. v. Harriman,* 227 U. S., 657; 33 Sup. Ct., 397; 57 L. Ed., 690.

In *Harmon v. Railroad Co.,* 106 S. C., 209; 90 S. E., 1023, the Court held:

"The Acts of Congress relating to interstate commerce are exclusive in that respect, and no damages for injury to a shipment are recoverable except those allowed by the Federal statutes."

This rule applies equally to questions of presumption arising from the facts in such cases. *Southern Railway Co. v. Prescott,* 240 U. S., 632; 36 Sup. Ct., 469; 60 L. Ed., 836. In this case (quoting from the syllabus) it is held:

"The measure of liability of a carrier of an interstate shipment under the bill of lading issued pursuant to the act to regulate commerce is a Federal question, and the obligation is to be governed under the Act by uniform rule in the place of the diverse requirements of State legislation and decisions; nor is the question less a Federal one because resolved by application of general principles of common law.".

On August 29, 1916, the Congress of the United States enacted what is known as the Uniform Bills of Lading Act (39 Stat., 538 [U. S. Comp. St., §§ 8604aaa–8604w]), purporting to occupy the field of legislation in reference to bills of lading in interstate shipments. The Act provides:

"Bills of lading issued by any common carrier for the transportation of goods, in any territory of the United States, or the District of Columbia, or from a place in a State to a place in a foreign country, or from a place in another State, or from a place in one State to a place in the same State through another State or foreign country, shall be goverend by this Act." Section 1 (Section 8604aaa).

The Act makes no change whatever in the liability of the carrier under the facts alleged in the complaint: That the consignor delivered the cotton to the railroad company for shipment; that the railroad company received it for shipment and issued its bill of lading therefor; and that it has failed to transport and deliver the cotton so delivered and received, as it had agreed to do.

This was the plaintiff's case as made by the complaint. By what process of reasoning the defendant shall be denied the right to support by evidence its controversion of the plaintiff's case it is difficult to conceive.

The plaintiff seeks to prevent the introduction of such evidence by advancing a different theory from that upon which his complaint is founded. Although he alleges that the cotton was actually delivered to and received by the railroad company, he now contends, on the contrary, that it was not so delivered and received, but that the issuing of the bill of lading acknowledging the receipt estops the defendant from denying the fact of such delivery and receipt, and claims the benefit of Section 22 of the Uniform Bills of Lading Act (Section 8604kk), which provides for the liability of a carrier which issues a bill of lading for the goods not actually received by it. Two courses of procedure were open to the plaintiff: (1) If the cotton, as a matter of fact, was actually delivered to and received by the carrier, and a bill of lading was issued therefor, his course was plain, to sue upon those facts in an action at common law, and that is what he did; (2) if the cotton was as a matter of fact not actually delivered to and received by the carrier, and a bill of lading nevertheless was issued, his remedy was not at common law, as the first remedy was, but under Section 22 of the Uniform Bills of Lading Act. He should not be allowed to bring the defendant into Court upon one theory, and, by shifting his ground to another theory, deprive the defendant of the right to offer evidence in support of his controversion of the theory originally advanced.

Considering, then, the complaint to be based upon the first of these two theories, as it unquestionably is, that the cotton was actually delivered to and received by the carrier, and that a bill of lading was issued therefor: This is a remedy at common law, and not under the Uniform Bills of Lading Act. Assuming then, as a matter of pleading,

that under such a theory the plaintiff is entitled to stand upon the contention that, although as a matter of fact the cotton was not so delivered and received, the carrier is estopped from denying the delivery and receipt by the issuing of the bill of lading and its transfer to a holder for value, it is perfectly clear from the Federal decisions upon the question, by which this matter is to be determined, that no such estoppel can arise, and that the carrier is entitled to show, as a fact, in complete exoneration, that the cotton was never delivered or received. Bear in mind that the plaintiff had his remedy either at common law, which he adopted, or under the Uniform Bills of Lading Act, which he did not adopt; in fact, by the allegation of delivery and receipt he removed his case entirely from the operation of Section 22 of the Uniform Bills of Lading Act, which provides for liability in case of nondelivery and nonreceipt—a condition which the complaint negatives.

It does not make any difference, so far as the applicability of the proper law is concerned, whether the plaintiff has proceeded at common law or under the statute. In the one case the construction of the common law by the Federal decisions controls, and in the other the Uniform Bills of Lading Act controls as interpreted by such decisions.

The interpretation of the rights of the plaintiff under the common law remedy which he has adopted is disclosed in the following extracts:

In 4 *Elliott on Railroads* (3d Ed.), § 2139, it is said:

"Bills of lading are only *prima facie* evidence between the original parties that the goods have actually come into the carrier's custody, and, like other receipts, are open to explanation, modification, or contradiction by parol. The receipt of the goods lies at the foundation of the contract to carry and deliver. If no goods are actually received, there can be no valid contract to carry or to deliver. And so it is held that a recovery cannot be had even by an innocent and *bona fide* holder for value against a common carrier for

goods never actually in its possession for transportation, though one of its agents, with authority to sign bills of lading, either through fraud, mistake, or negligence, issued a bill of lading"—citing a vast number of authorities, among them the following Federal decisions: *Schooner Freeman v. Buckingham,* 18 How., 182; 15 L. Ed., 341; *The Lady Franklin,* 8 Wall., 325; 19 L. Ed., 445; *Pollard v. Vinton,* 105 U. S., 7; 26 L. Ed., 998; *St. Louis, etc., R. Co. v. Knight,* 122 U. S., 79; 7 Sup. Ct., 1132; 30 L. Ed., 1077; *Friedlander v. Railroad Co.,* 130 U. S., 416; 9 Sup. Ct., 570; 32 L. Ed., 991; *Clark v. Barnwell,* 12 How., 272; 13 L. Ed., 985; *Atchison, etc., R. Co. v. Harold,* 241 U. S., 377; 36 Sup. Ct., 665; 60 L. Ed., 1050; *Eccles v. Railroad Co.* (D. C.), 198 Fed., 899; *U. S. v. Eighty-Seven Barrels of Wine* (D. C.), 180 Fed., 221.

It is conceded that the Uniform Bills of Lading Act has modified the foregoing rule so far as cases brought under the terms of that Act are concerned. Section 22 provides:

"If a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the receiving of goods and issuing bills of lading therefor for transportation in commerce among the several States and with foreign nations, the carrier shall be liable to

"(a) the owner of goods covered by a straight bill subject to existing right of stoppage *in transitu,* or

"(b) the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods,

"for damages caused by the nonreceipt by the carrier of all or part of the goods or their failure to correspond with the description thereof in the bill at the time of its issue."

It is clear that the shipper or consignee who would seek to obtain the benefit of this section must by appropriate allegations bring himself within the terms of the section. He must allege: (1) That the bill of lading was issued;

(2) that it was issued by the carrier or its agent; (3) that the goods covered by the bill of lading were not received by the carrier; (4) that he was the owner or consignee, in the case of a straight bill, or the holder of an order bill for value in good faith; (5) the damages sustained by reason of the nonreceipt of·all or a part of the goods or their failure to correspond with the description.

An action which negatives the basic fact of this section, the nonreceipt of the goods by the carrier when it issued the bill of lading, cannot be deemed an action under this section. It requires no authority for the proposition that he who claims the benefit of a statutory right must by appropriate allegations bring himself within the provisions of such statute. *Sanders v. Railway Co.,* 97 S. C., 423, at page 429; 81 S. E., 786.

But, if this action could be considered as an action under Section 22 of the Uniform Bills of Lading Act, as though the plaintiff had alleged the issuing of the bill of lading without the receipt of the cotton, and its transfer to him for value in good faith, the plaintiff, as the holder of a straight bill, would be subject to the same defenses as the transferor would be subject to, as against the carrier.

The Act draws sharp distinction between what are demonstrated "straight" bills of lading and "order" bills. A straight bill is one "in which it is stated that the goods are consigned or destined to a specific person." An order bill is one "in which it is stated that the goods are destined or consigned to the order of any person named in such bill." An order bill is negotiable in the commercial sense. A straight bill is transferable, but not negotiable in that sense.

Section 29 of the Uniform Bills of Lading Act (Section 8604o) provides:

"A bill may be transferred by the holder by delivery, accompanied with an agreement, expressed or implied, to transfer the title to the bill or to the goods represented thereby. A straight bill cannot be negotiated free from

existing equities, and the indorsement of such a bill gives the transferee no additional right."

In Section 32 (Section 8604pp), it is provided:

"If the bill is a straight bill such person [that is, the transferee] also acquires the right to notify the carrier of the transfer to him of such bill and thereby to become the direct obligee of whatever obligations the carrier owed to the transferor of the bill immediately before the notification."

There can be no question but that the bill of lading in the case at bar was a straight bill. It was issued to Copeland and showed upon its face the name of the plaintiff as the consignee.

It appears to follow indisputably from these provisions that the transferee of such non-negotiable instrument acquires the rights only of his transferer, and that in an action upon it the carrier is entitled to set up any defense which he may have had against the transferor.

Putting aside the apparent anomaly of a person being the owner of goods not delivered, or perhaps not existing (as in the case at bar), it is inconceivable that such owner could be damaged by the nonreceipt by the carrier of all the goods apparently covered by the bill of lading. If, when he secured the false or incorrect bill of lading, he delivered to the carrier no goods at all, how is it possible for him to have been damaged by the carrier's failure to receive the goods described in the bill? If he continued in possession of the goods, of course he was not damaged; if he did not own any such goods, he could not have been damaged by the carrier's failure to receive them.

It is equally inconceivable that the owner could be damaged by the nonreceipt by the carrier of a part of the goods apparently covered by the bill of lading. Take, for instance, the case of a shipper who has 97 horses for shipment. He accepts from the carrier a bill of lading incorrectly stating that the shipment consisted of 100 horses.

The carrier does not receive 3 horses. They are not owned by the shipper and do not exist. How is it possible that the owner of the 97 has been damaged by the failure of the carrier to receive the 3 horses?

If the Act imposes such a liability upon the carrier, it is plainly unconstitutional, as depriving the carrier of his property without due process of law.

It is plain, however, that although the owner may not suffer damages by the nonreceipt of certain goods, all or part, described in the straight bill of lading, a transferee of the bill for value in good faith may suffer by the false statement contained in the bill. Whether or not he may recover from the carrier for such damages, depends upon the rights which he has acquired under the act by the transfer. From the extracts above quoted from the act it is clear that the transfer is "not free from existing equities" (that is, equities existing between the transferor and the carrier); that the indorsement of the bill of lading "gives the transferee no additional right"; that the transferee becomes the obligee "of whatever obligations the carrier owed to the transferor."

If, therefore, it be settled, as it unquestionably is, by the Federal authorities hereinbefore referred to, that where no goods are received by the carrier, it is not responsible to the shipper, or even to a bona fide transferee for value of the bill of lading, for the goods so represented to have been received, it follows that the carrier has a complete defense in showing that no goods at all were in 'fact received.

What has been said applies to straight bills of lading, and not to order bills, which are negotiable, the transferees of which are fully protected under the Act.

Under the rule of the exclusive application of Federal statutes and decisions to a bill of lading issued in interstate commerce, it is not necessary to refer to the decisions of this Court. It may be stated, however, that our decisions fall very far short of holding that in a case of nonreceipt of any of the goods the carrier is estopped from setting

up the defense of nonreceipt. As far as they go is that, when some goods are received, and a misstatement in the bill causes loss to a transferee in good faith, for value, by reason of a deficiency, the carrier is estopped. *Thomas v. Railroad Co.,* 85 S. C., 537; 64 S. E., 220; 67 S. E., 908; 34 L. R. A. (N. S.), 1177; 21 Ann. Cas., 223; *Smith v. Railroad Co.,* 89 S. C., 415; 71 S. E., 989.

The judgment of this Court should be that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MARION concurs.